UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

UNITED STATES OF AMERICA,       )
                                )
                Plaintiff,       )            2:21-CR-00112-DCLC-CRW
                                )
        v.                       )
                                )
CURTIS MITCHELL PAUL,            )
                                )
                Defendant.       )

**MEMORANDUM OPINION AND ORDER**

Before the Court is a Report and Recommendation of United States Magistrate Judge
Cynthia R. Wyrick filed on September 26, 2022 [Doc. 25] (the "R&R"), recommending that this
Court deny Defendant's Motion to Suppress Evidence [Doc. 16]. Defendant filed objections to
the R&R [Doc. 26]. For the following reasons, the Court **ADOPTS** the R&R [Doc. 25] and
**DENIES** Defendant's Motion to Suppress [Doc. 16].

I.      **BACKGROUND**

On February 10, 2021, at about 1:59 p.m. FBI Task Force Officer Joe Jaynes was working
in his office in Johnson City when he overheard dispatch announcing a robbery had just occurred
at 815 W. Walnut Street, Johnson City, Tennessee, and that the suspect had proceeded out the store
on foot [Doc. 24, pg. 30]. Dispatch reported that the suspect was about 5'2" wearing a white
jacket, dark green gaiter-type mask, a bluish hat and had used a ten-inch silver knife in the robbery
[Doc. 22, Exs. D1B, D1C]. Officer Jaynes immediately proceeded to the general area of the
robbery. Another officer sent out several pictures he obtained from the store's video surveillance
camera [Doc 22, Exs. 2–4]. One showed the suspect waist up, wearing a black hat, black neck

1

gaiter, sunglasses, and a large bright blue jacket with what appeared to be a black jacket underneath. One of the pictures showed the entire body of the suspect with khaki pants on.

Officer Jaynes proceeded to the general area of the robbery [Doc. 24, pg. 16]. At about 2:16 p.m., he encountered Defendant about a block or so to the east of the scene of the robbery [Doc. 24, pg. 45], wearing a black jacket, black cap, black neck gaiter, and blue jeans and exhibiting a bulge in his right front pants pocket [Doc. 24, pg. 13, 16, 46]. Although Defendant was not wearing a bright blue jacket like the suspect in the photographs, Officer Jaynes testified he nevertheless stopped him because "in my training and experience it's common for robbery suspects to shed outer garments of clothing in an attempt to avoid detection." [Doc. 24, pg. 14]. Moreover, although the suspect had reportedly fled to the west of the robbery, not to the east where Officer Jaynes found him, Officer Jaynes testified that he had previously encountered suspects who changed directions when fleeing from the scene of a crime [Doc. 24, pgs. 71–72].

Officer Jaynes exited his car, identified himself as law enforcement, and said to Defendant "Hey, I'm Detective Jaynes with the Police Department. Come over here and talk to me." [Doc. 24, pg. 17]. Defendant stated, "No, I didn't do anything" and proceeded to walk away from the officer. At this point, Officer Jaynes grabbed Defendant's arm because he "felt like [he] needed to conduct of brief detention to investigate whether or not he was the robbery suspect." [Doc. 24, pg. 17]. Defendant "jerked away" and "started reaching for his right front pocket," saying "I'm going to grab something here…." [Doc. 24, pg. 24]. In response, Officer Jaynes immediately pushed Defendant against the rock wall preventing him from reaching in his front pocket. Another officer arrived and conducted a pat down in which a loaded taurus firearm was found in Defendant's front pocket [Doc. 24, pg. 24]. Officer Jaynes arrested Defendant, who, as it turned out, was a convicted felon and could not legally possess a firearm.

2

On October 13, 2021, a federal grand jury indicted Defendant, charging him with a possession of a firearm by a convicted felon violation of 17 U.S.C. § 922(g)(1) [Doc. 1]. On July 27, 2022, Defendant filed the present motion to suppress, and on August 8, 2022, the United States of America responded in opposition [Doc. 20]. On August 29, 2022, the magistrate judge held an evidentiary hearing at which Officer Joe Jaynes testified [Doc. 24]. On September 26, 2022, a Report and Recommendation was filed, which recommended the motion be denied [Doc. 25]. Defendant timely filed objections to the R&R [Doc. 26].

Paul raises five objections to the magistrate judge's findings of fact. The first objection relates to the description of the clothing the suspect was wearing. Here he acknowledges that Officer Jaynes observed the suspect was wearing a black hat, black neck gaiter, sunglasses and bright blue jacket with a black jacket underneath but also "khaki pants" and "black shoes" [Doc. 26, pg. 1]. The second objection relates to what Officer Jaynes recalled hearing over dispatch about the suspect's height and the knife. Here he claims the officer was being crafty in his responses because he did not deny hearing those descriptions, just that he did not recall. He claims a "careful listener will recognize [that distinction] . . . represent[s] a distinction *with* a difference." [Doc. 26, pg. 2] (emphasis in original). The third objection relates to the magistrate judge's finding that the precise location where the officer encountered Defendant was not crucial because a fleeing suspect may change directions to avoid detection. He argues that "[t]his explanation does not appear in the transcript." [Doc. 26, pg. 2]. In the fourth objection, Defendant argues the magistrate judge should be faulted for crediting Officer Jaynes' testimony that he had seen someone carry a knife in their front pocket before. [Doc. 26, pg. 4] ("Jaynes offered no specific example of when he'd 'seen it' and admitted that he had personally never carried a Bowie knife in his front pocket . . . ."). The fifth objection pertains to the magistrate judge finding that sufficient

similarity between the photographs depicting the suspect and what Defendant was wearing. Defendant contends that the officer lacked reasonable suspicion to stop Defendant because he was wearing blue jeans at the time of the stop and the photograph of the suspect shows a person wearing khaki pants. He contends Officer Jaynes lacked reasonable suspicion to conduct an investigatory stop because his "general appearance did not match the description received" by Officer Jaynes. [Doc. 23, pg. 4].

Defendant further objects to the magistrate judge's conclusions of law. He first argues that the totality of the circumstances failed to provide Officer Jaynes with reasonable suspicion to initiate an investigatory stop and that his explanation that fleeing suspects commonly shed layers of clothing was mere "bootstrap[ping]" [Doc. 26, pg. 5]. Second, he argues that the officer, and by extension the magistrate judge, over-relied on "contextual factors" rather than facts raising particularized suspicion against Defendant [Doc. 26, pgs. 5–6]. Third, he asserts that the magistrate judge erred in finding that Defendant's clothing "reasonably matched" Officer Jaynes' description [Doc. 26, pgs. 6–7]. Fourth, Defendant contends that the officer's testimony was insufficient to support a reasonable inference that Defendant shed outer garments of clothing [Doc. 26, pg. 7]. Fifth, he argues that the officer's testimony is inconsistent with a reasonable inference of Defendant's involvement in the robbery because the officer failed to testify that it was "common" for suspects to remain in the area of a crime scene [Doc. 26, pg. 8]. Sixth and finally, Defendant asserts that the magistrate judge erred in concluding that the officer reasonably believed the bulge in Defendant's pocket could have been the knife used in the robbery [Doc. 26, pg. 9].

Defendant's objections to the R&R can be categorized into two underlying arguments. Those are that the Magistrate Judge erred in: (1) determining that Defendant's appearance reasonably matched the information Officer Jaynes knew about the suspect and (2) concluding that

4

Defendant acted and appeared consistent with Jaynes' experience with fleeing suspected felons. The Court addresses these arguments in turn.

## II. ANALYSIS

The Fourth Amendment protects against unreasonable searches and seizures "and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Law enforcement's actions must be "supported by reasonable suspicion to believe that criminal activity 'may be afoot.'" *Id.* (citation omitted). "There is not a bright-line rule to determine whether an officer had reasonable suspicion." *United States v. Luqman*, 522 F.3d 613, 616 (6th Cir. 2008). Instead, the focus is on the "totality of the circumstances surrounding the stop to determine whether the officer had a particularized and objective basis for suspecting criminal activity." *Id.* (quoting *Arvizu*, 543 U.S. at 266). On this point, the Sixth Circuit counsels against looking "at each factor leading to the stop individually," instead favoring examination of all "the factors as a whole" because each of the separate factors might each have "an innocent explanation" yet in the aggregate justify further investigation. *Id.* (citations and internal quotations omitted). Moreover, "due weight [must be given] to the officer's factual inferences[] as their specialized training and experiences allow them to draw inferences . . . that might well elude an untrained person." *Id.* (internal quotations omitted) (citing *United States v. Marxen*, 410 F.3d 326, 331–32 (6th Cir. 2005). Reasonable suspicion is less than probable cause, "which itself 'is not a high bar.'" *McCallister*, 39 F. 4th at 374 (quoting *D.C. v. Wesby*, 138 S. Ct. 577, 586 (2018)). All that is required is a "moderate chance of finding evidence of wrongdoing." *Id.* at 373 (quoting *Safford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 370–71 (2009)).

### a.    Objections based on differences in the suspect's appearance

The store clerk reported his store had been robbed at approximately 1:59 p.m. [Doc. 24, pg. 30].  An officer responded at the store and took several pictures from the video taken from the surveillance camera [Doc 22, Exs. 2–4].  The first picture shows the suspect wearing a dark cap, bright blue jacket, and a dark neck gaiter and sunglasses.  Less than 20 minutes after the dispatch, Officer Jaynes saw Defendant walking near the scene of the crime with a dark hat, dark neck gaiter, and dark jacket [Doc. 24, pg. 13, 16, 46].

Defendant argues that his pants and shoes were different than those worn by the suspect and that he could not have easily changed them in the 20 minutes between the robbery and the stop.  But not all the photos showed the suspect was wearing khaki pants and shoes [Doc 22, Exs. 2–4].  Further, Jaynes testified that he viewed these low-resolution images on his cell phone [Doc. 24, 10:14–16].  The fact that in this case there were some differences in the descriptions does not defeat reasonable suspicion.  The real key is whether "the description is sufficiently unique to permit a reasonable degree of selectivity from the group of all potential suspects."  4 W. LaFave, Search and Seizure, § 9.5(h) Location near scene of recent crime, pg. 780 (6th ed. 2020).

In any event, "the touchstone of the Fourth Amendment is reasonableness, not perfection." *United States v. Moberly*, 861 Fed. App'x 27, 30–31 (6th Cir. 2021) (citing *Heien v. North Carolina*, 574 U.S. 54, 60–61) (holding that where a witness described a suspect standing among a congregated group as having dreadlocks, wearing a brown jacket, and driving an Oldsmobile, officers had reasonable suspicion although the suspect in fact drove a Buick and wore a gray sweatshirt).  The descriptions were not so vague as to essentially permit a broad dragnet to stop everyone the officer encountered.  The description was that the suspect was a white male who fled on foot and was identifiable by several items of clothing the suspect had been wearing.

Although the dispatch described the robbery suspect as five-foot-two, Officer Jaynes testified that he "did not recall" hearing this description [Doc. 25, pg. 4]. Defendant stresses that this testimony was not a denial, and because Officer Jaynes did not deny hearing the description, the height discrepancy between Defendant and the robbery suspect defeats reasonable suspicion. Defendant's emphasis on the wording of Officer Jayne's testimony is unpersuasive, however. Jaynes' inability to recall hearing the suspect's true height in no way shows that he in fact heard it but ignored it. Officer Jaynes' testimony fairly establishes that the suspect's height did not enter his decision to stop Defendant.

Defendant further argues that the general public commonly wears neck gaiters in the wake of Covid-19, but this reality also does not defeat reasonable suspicion. Officer Jaynes could discern from the surveillance footage that the suspect was wearing a dark neck gaiter. This observation "winnow[ed] the class of potential suspects" such that, alongside the other factors in this case, there was at least a moderate likelihood that Defendant was the suspect. *See United States v. Davis*, 341 Fed. App'x 139, 141 (6th Cir. 2009).

Because Jaynes' decision to stop Defendant was based on sufficient specific and articulable facts, he did not over-rely on contextual factors. *See United States v. Caruthers*, 458 F.3d 467 (6th Cir. 2006). Courts indeed must weigh contextual factors carefully such that any person near the scene of a crime is not subject to seizure merely for being in the wrong place at the wrong time. *Id.* at 465. Here, however, Defendant's proximity to the robbery was buttressed by his dress and the bulge in his pocket, factors that were specific to him and unrelated to his surroundings.[1]

---

[1] Defendant further argues that he exhibited no nervous or evasive behavior, *see Illinois v. Wardlow*, 528 U.S. 119, 124 (2000), no furtive movements, *see Florida v. J.L.*, 529 U.S. 266, 268 (2000), and no hasty retreat, *see Wardlow*, 528 U.S. at 124. But, as explained above, Officer Jaynes relied on other facts in deciding to stop Defendant.

Officer Jaynes also explained that he disregarded Defendant's lack of sunglasses and a bright blue jacket because—in his experience—fleeing suspects commonly shed outer layers of clothing to avoid detection [Doc. 24, 11:3–5]. In fact, many courts reasonably conclude that exact matches of clothing descriptions will not defeat reasonable suspicion because of the obvious fact that a suspect may discard some items of clothing. *See United States v. Arthur*, 764 F.3d 92, 98 (1st Cir. 2014)("[w]e think it entirely plausible (as did the district court) that the robbers might proceed to a nearby street and shed identifying clothing").

As explained above, Jaynes observed additional facts giving rise to reasonable suspicion that Defendant was a suspect in the recently committed robbery. The conclusion that Defendant could have shed clothing was therefore a "rational inference from" specific and articulable facts on which officers are entitled to rely under *Terry*. 392 U.S. at 21. Here, because Defendant was in the vicinity of the robbery, was of the same race and sex of the suspect and was wearing clothing that in some respects matched that of the suspect, Officer Jaynes had reasonable suspicion to stop Defendant. He was entitled to infer Defendant may have discarded other articles of outer clothing, and the Court must give "due weight" to his inference. *Luqman*, 522 F.3d at 616.[2]

But more importantly, officers should be permitted to account for errors in the description provided. In this case, the first description was the suspect was wearing a white jacket. The pictures from the surveillance camera show that was plainly wrong [*See* Doc. 24, pg. 36].

> One question which sometimes arises with regard to the requisite particularity of a description to justify stopping a person for investigation in connection with a recently committed crime is this: when there are several points of comparison possible as a result of the description, may a person ever be lawfully stopped even though he does not match up on all points? The answer is yes, for the investigating officers must be allowed to take account of the possibility that some of the

---

[2]     Moreover, because reasonable suspicion is an objective standard, *see Terry*, 392 U.S. at 21, Officer Jaynes was not required to "conclud[e]" on the record, as Defendant suggests [*See* Doc. 26, pg. 7], that Defendant in fact shed a jacket and sunglasses.

8

descriptive factors supplied by victims or witnesses may be in error.

4 W. LaFave, Search and Seizure, § 9.5(h) Location near scene of recent crime, pg. 784 (6th ed. 2020).

Similarly, Officer Jaynes was entitled to rely on his past observation of a fleeing suspect who had changed directions to avoid being apprehended. Reasonable suspicion does not require that suspects *commonly* display any pattern of conduct [*see* Doc. 26, pg. 2], only that the evidence supports a reasonable suspicion that Defendant had been involved in the robbery under the totality of circumstances test. In fact, it defies logic to assume that when a robber flees the scene he must remain in a straight line. Jaynes testified that he had seen at least one suspect change directions while fleeing [Doc. 24, 68:24–69:1].

Lastly, Paul objects that ordinary people do not commonly carry ten-inch knives in their front pockets, and that the magistrate judge erred in crediting Jaynes' testimony that "he had seen it happen" [Doc. 25, pg. 4]. But like the other aspects of Jaynes' experience, this observation permitted a reasonable inference that Defendant was carrying a knife or money from the robbery. This further supports Officer Jaynes' reasonable suspicion that Defendant was a suspect in the recent robbery and justified his initial stop of Defendant.

## IV. CONCLUSION

For the foregoing reasons, Defendant's objections [Doc. 26] are **OVERRULED** and the R&R [Doc. 25] is **ADOPTED**. Defendant's Motion to Suppress Evidence [Doc. 16] is **DENIED**.

**SO ORDERED:**


s/Clifton L. Corker
_____
United States District Judge

9